NEWBRAU *vs.* SNIDER.

July Term, 1865.

S. gave N. a sum of money, in the presence of a witness, and stated that it was to purchase sheep with, and that if losses occurred he was not to have any interest for his money, but if profits accrued he was to have one-half thereof; and subsequently stated that he and N. were partners, and that the interest of his money was to offset the labor of N. in the enterprise. HELD:

That this was a partnership as to the whole sum, and that it was not limited to the profits or any portion of the adventure only.

In February, 1860, *Alexander Snider* brought his action of assumpsit against *Eugenius Newbrau* in the county court of *Monongalia*. At the March rules he filed his declaration containing the usual common counts and also a special count alleging that, on the 12th day of September, 1857, at the request of the defendant he loaned to him the sum of three hundred dollars to buy sheep with, and then and there undertook and promised the plaintiff, that he would purchase sheep with said sum of money, and at the end of the year from the date of the loan, defendant would repay the full amount of the loan, and in lieu of interest, he would give plaintiff one-half of the profits on the sale of sheep to be purchased with the money; and then alleged, that a long time had elapsed since the loan, and yet neither the loan nor any profits had been returned or repaid to him. The bill of particulars was as follows:

*Eugenius Newbrau,* Dr. To *Alexander Snider,*

| | |
|---|---|
| 1857, September 12th—To money loaned | $300.00 |
| 1858, September 12th—To one-half of the profits in the sale of sheep purchased with the above money, | $100.00 |
| | $400.00 |

---

\* He had been engaged in the cause below, and *Thomas W. Harrison*, judge of the 3rd circuit, was called to assist the court.

The defendant entered a general demurrer to the declaration, which was overruled by the court.

On the trial of the cause, *Fox*, one of the witnesses, proved that about the time of the loan, as alleged in the declaration, the plaintiff and defendant came to his house and asked him to draw up a writing between them; that plaintiff gave him some money to count over, which appeared to be one hundred and eighty dollars; that defendant said he had previously got one hundred and twenty dollars from plaintiff. Defendant said that he was to have the money to trade in sheep, and that plaintiff was to have half that he made, if he made anything. Plaintiff then said, if he made nothing, he was not to charge any interest on the money. Witness then drew the following paper signed by the defendant.

"September the 12th, 1857, received of *Alexander Snider* three hundred dollars to *buy* sheep with, as witness my hand and seal.                                      his

Attest, *M. P. Fox*,          *Eugenius* x *Newbrau*, [seal.]"
                                      mark.

He further stated that defendant was to go into the sheep trade as soon as he got home, (he resided in *Tyler* county,) as witness understood, and that defendant afterwards brought sheep into the neighborhood and sold them.

*Neely*, another witness introduced by the plaintiff, proved that in a conversation with the defendant he stated that he had some of the plaintiff's money, and that if he must have it, he intended to pay him every cent he owed him; that plaintiff told him that he had let the defendant have three hundred dollars, that he was to buy sheep with it, and was not to charge him any interest for it, but that the interest was to butt against defendant's labor, and that they were partners, he was to have half the profits that were made in sheep, and that he never got any profits or the money back.

The defendant demurred to the evidence upon the ground that it disclosed a partnership, and the jury returned a verdict for three hundred dollars with interest from the 20th day of February, 1860. The court sustained the demurrer

and gave the defendant judgment for costs. *Snider* then applied to the circuit court for a writ of supersedeas, alleging that the county court was not warranted, from the evidence, in arriving at the conclusion that there was a partnership: that if any existed, it was only as to the profits, if such could exist in contemplation of law, which were not considered by the jury in their verdict, and that although a partnership may exist as to profits alone between the parties and *third* parties, still none existed as between this plaintiff and defendant.

The circuit court allowed the writ, and at the May term, 1864, reversed the judgment of the county court. The defendant then applied to this court for a supersedeas, which was allowed, alleging, that the county court erred in overruling the demurrer to the declaration, and that the circuit court erred in overruling the judgment of the county court in sustaining the demurrer to evidence.

*J. M. Hagans* for the plaintiff in error.

The county court erred in overruling the demurrer to the declaration, 1st, Because it does not aver that profits were made, yet sets forth a contract in which profits are declared to be a consideration and a substantial part thereof. 2d, The common counts, taken in connection with the bill of particulars, disclose a case of usury. 3rd, In admitting the testimony of *Fox* as to the items of one hundred and twenty dollars and one hundred and eighty dollars under the bill of particulars filed.

The circuit court erred in reversing the judgment of the county court on the demurrer to evidence.

The declaration sets forth a contract for the loan of the money for one year, which was to be returned at the end thereof with one-half of the profits, whereas the contract as proven, shows that the money was deposited to buy sheep with, in partnership, and no time was fixed for the return thereof or for accounting for the profits, and therefore the contract as proven is different from that alleged.

Was there a partnership here?

A partnership is a voluntary contract between two or more competent persons, to place their money, effects, labor or skill, or all of them combined, in lawful commerce or business, with the understanding that there shall be a communion of the profits between them. One may contribute money, another skill and labor, accordingly as they may agree. The law would undoubtedly make the transaction under consideration, a partnership, but by the express declarations of the parties here, it is such. One contributes the capital for a specific purpose and agrees to lose the interest, if any losses occur, and to share the profits if any be made; the other agrees to furnish the labor and skill, and to lose both if no profits accrue, and to divide equally if the enterprize be successful. How can it be known what is the result of the business until there be a settlement and an accounting between the parties? and how can that be accomplished except by mutual understanding, or by a bill in equity?

*P. H. Keck*, for the defendant in error, filed his argument in writing.

Did the county court err in overruling the demurrer to the plaintiff's declaration, or to any count thereof? I think not. Even the appellant does not claim that it did so err as to the common counts, which renders further argument as to them unnecessary.

Then did it err as to the special count? It did not, unless it lies in the fact of making of profits by the defendant. This, it is submitted, was not error, because the plaintiff did not thereby allege or claim any share of such profits, nor seek to recover any definite or other portion or amount of said profits. Had the plaintiff, in and by said count, claimed to be entitled to recover, or rather sought to recover, any certain amount of such profits from said defendant, then, indeed, he ought to have averred that the defendant had made profits from said enterprise, to an amount one-half of which would at least equal the sum so claimed by said count, but not otherwise. It is true that this special count does

set out what the agreement was as to the profits, but does not pretend to claim or seek a recovery of any such profits.

It it may be admitted that said count is not very nicely or technically framed, still I believe it substantially good. But let me, for argument sake, suppose the special count was bad, and that the demurrer ought to have been sustained as to it; is, or was the defendant injured thereby? or, in other words, was not a recovery to at least the same amount, proper under the common counts for money loaned, or, for money had and received? I respectfully insist that it was. If so, the defendant was not, and is not injured by said judgment overruling the demurrer to the special count.

Here was, it is true, a contract, loose in its phraseology and terms at best, fully executed and performed on the part of the plaintiff, leaving nothing but a compensation in money to him by the defendant. For this money a recovery may be had, and was properly had on the common count. *Brooks* v. *Scott's ex'rs*, 2 Munf., p. 344, and cases there cited. Tuc. Com., book 3, marginal page 134.

Under the common counts the following bill of particulars was filed:

"*Eugenius Newbrau*,        Dr.

"To *Alexander Snider*,

"1857. Sept. 12th—To money loaned,            $300  00
"1858. Sept. 12th—To one-half of profits in sale
    "of sheep purchased with the above money,    100  00

                                                 $400  00"

Thereby giving to the defendant full and fair notice that a recovery would be sought against him in said action for 300 dollars loaned money. So that the plaintiff's right to recover on the common count for money loaned, &c., is to my mind at least, clear, unless prevented by reason of the next error assigned by the appellant, to wit: That the court erred in admitting proof of the 120 dollars and 180 dollars, referred to in defendant's third bill of exceptions, in connection with receipt A, and proven by the same witness.

Was this error? I maintain that it was not. First, be-

cause these items were not only proof of the receipt and
loan of the money as charged in said bill of particulars; for
it will be seen by reference to the testimony of *Martin P.
Fox,* that he was the subscribing witness to the writing, and
that the defendant executed said writing at the time the
money was so received or loaned, which writing is as follows:

"September the 12th, 1857.  Received of *Alexander Snider,*
"three hundred dollars to buy sheep with.  As witness my
"hand and seal.                            his

"Attest:                      *Eugenius* x *Newbrau,* [SEAL.]
     "*M. P. Fox.*"                        mark.

Thereby, it is maintained, proving the precise sum of money
lent the defendant, and as specified in said bill of particulars,
and at the precise time charged; by which deed of the
defendant he is estopped from now denying that the whole
300 dollars was in fact received at the time, and as therein
specified.

But it may be argued by the appellant here, that said wit-
ness *Fox* further proved, that about four years ago last Sep-
tember, as he thinks, plaintiff and defendant came to his
house, and asked witness to draw up a writing between them;
and at the same time the plaintiff gave him a lot of money
to count out to defendant, and see how much there was;
that he counted it over, and there appeared to be 180 dollars;
at the same time defendant said he had got 120 dollars (of
the plaintiff) before that time, making 300 dollars in all.
He then went on and drew the writing marked A, which
the defendant executed and he witnessed.

The plaintiff in error, alleging now that as defendant
below he had no notice given him either by the plaintiff's
bill of particulars, or declaration, of any such items, and
therefore the court erred in admitting such proof.

Permit me, Your Honors, to examine a little more partic-
ularly, this last assigned error.  And to this end, let us sup-
pose that the only evidence offered as to the amount of
money loaned, was this statement of said witness *Fox.*
Would it not be admissible under said bill of particulars?
The bill of particulars charges 300 dollars loaned the defen-

dant on the 12th of September, 1857, but at no particular hour or moment of that day; it, therefore, includes the whole day.

Now the witness says the plaintiff and defendant came to his house on the same day and time the paper writing A, was executed; that the plaintiff handed him a lot of money to count for defendant, and which counted 180 dollars; that defendant then said he had got of the plaintiff 120 dollars before that time, making 300 dollars in all. How long before that time it was that he had got the 120 dollars we have no definite means of knowing; but the fair and reasonable presumption is, that it was immediately before, and that they came over to witness to get him to witness the completion of the transaction, and prepare the proper paper acknowledging the receipt of the money, &c. Had it not been immediately before this, that the 120 dollars was received, and therefore but a part of the same transaction, but on the contrary an independent transaction, I submit we should reasonably infer that it would have been witnessed by some writing or receipt. None such seems to have existed. The mere fact of handing, or counting it to defendant in two separate parcels, or at two different times or moments, is immaterial, provided the whole was intended to be, and was in fact, but a part of one and the same transaction. That this was intended to be, and was treated as such by the parties, is clearly and conclusively manifested by the writing then taken and subscribed by the defendant as aforesaid.

The case before us, it is submitted, does not belong to, or come within that class of cases enumerated in the case of *Minor* vs. *Minor's* administrator: 8th Grat. p. 1. There *A. W. Tenant*, administrator of *John Minor*, deceased, brought his action of assumpsit in the circuit court of *Monongalia* county, against *Samuel Minor*. The declaration contained but two counts. Both the common counts for money had and received, generally. The first, for money received to the use of the plaintiff's intestate, in his lifetime. The second, for money received to the use of the plaintiff, as

administrator of *John Minor*. The bill of particulars filed therewith, was equally general, and claimed a certain and fixed sum of 300 dollars, and did not state from whom or when received. The only evidence offered to prove the account was, that the defendant, *Samuel Minor*, admitted in March, 1846, that he had received from one *Lancaster Minor*, in the spring of that year, 250 dollars belonging to the estate of *John Minor*, deceased, the plaintiff's intestate; to the introduction of which evidence, the defendant objected, on the ground that neither the declaration nor bill of particulars gave defendant sufficient notice of any such claim; but the circuit court overruled the objection and admitted the evidence. And on supersedeas the court of appeals reversed said judgment, for the reason stated above. This decision is thought by good lawyers and judges to lean towards a very harsh and rigorous enforcement of the rule on this subject; but is nevertheless, I believe, strictly correct.

There, the certain sum of 300 dollars was claimed by the declaration, and charged by the bill of particulars as received, without stating from whom or when received; while the only proof offered to sustain either, was an acknowledgement of the receipt of 250 dollars from a third person. Here, the amount, time and person are all truly stated in the bill of particulars, and also, the object for which the loan was made. Thus giving the defendant the most ample notice of the character and amount of the claim recovered. And it is submitted that the proof here not only agrees with, but fully sustains the bill of particulars. If I am correct in this, then it is submitted that the plaintiff had an indisputable right to recover, as he did, on his common counts alone, independent of the special count; but this count is also good, and warranted a recovery under it.

But again: the appellant alleges that the county court erred in excluding an answer to the question propounded by him to witness *Nimrod Neely*, as set forth in his 2d bill of exceptions. But it is apparent to my mind at least, that there is not even a shadow of error here. First, because the answer sought at best, was only hear-say; and secondly,

because, it was neither material or relevant to the issues joined. The court therefore properly refused to allow the question to be answered.

Taking this view of the said rulings of the county court, it must follow that the circuit court did not err in affirming and sustaining the same, as claimed by the appellant, in his 3rd assignment of errors.

It is claimed by the appellant that the circuit court erred in reversing the judgment of the county court on the demurrer to evidence in the cause. But I submit for the appellee, that the said judgment of the county court was wrong and the circuit court right in reversing it. The defendant below, by demurring to the evidence, admitted its truthfulness; and also, all fair and reasonable deductions and inferences arising therefrom; and also, thereby waived any and all evidence taken by him at variance or in conflict with the plaintiff's evidence, or such fair and reasonable deductions and inferences.

The effects of, as well as the mode and manner of weighing and treating a demurrer to evidence, are familiar to this court, and therefore makes it unnecessary for me to refer it to authorities on the subject. Treat this case in this way, and I cannot see how the circuit court could have rendered any other judgment than it did. The evidence is as clear, concise and conclusive as to the 300 dollars, as it could well be, or as the deed of the defendant could make it.

The verdict of the jury, and judgment of the circuit court, were for the 300 dollars loaned only, with interest from the date of the summons in the cause, whereas it might, and strictly considered, should have borne interest from a much earlier period; but of this the appellee is not complaining. I can only anticipate the argument of the appellant here on this point, by answering it as made in the courts below. The only ground assigned below, why judgment should be for the defendant, was, that the evidence disclosed a partnership between the plaintiff and defendant, in the premises; but which view the circuit court refused to sustain, and I maintain, rightly.

As to what constitutes a partnership *inter se*, and what as to third parties, &c., see Gow on Partnerships, mar. pages, 1, 10, 11, 12, 13, 14, 18, 19 and 20, (third ed. by Ingraham.) Story on Contracts, §§ 203, 204, 205, 206, 207, 208, 209 and 210, (and note 1 under section 208). Section 203 declares (without exception) that a partnership *inter se*, must be by contract, and that the parties must intend to create a partnership thereby; and that the intent is the key to such contract. Did the parties as shown by the evidence here intend to create a partnership? If not, then there can be none.

There is also lacking that other ingredient of all partnerships *inter sese*, to wit: community of interest in the enterprise. Not even a partnership name. Not a syllable indeed, which even looks like giving or permitting the plaintiff *Snider*, any control whatever over the enterprise, either in buying, or selling, or anything else. Nothing, indeed, but a quaint, obscure, and indeed a generally misunderstood expression that they were partners, as to the profits, in this, that the plaintiff was to receive one-half the profits, in lieu of interest on his 300 dollars lent the defendant, and that in case no profits were made, the plaintiff was to receive no interest on said money.

The true intent and meaning of the parties was not, I submit, to create a partnership, but simply to put said money, so far as its accruing interest was concerned, at risk, to be measured by the success of the defendant's enterprise, and nothing more.

It is therefore maintained that the parties did not intend to create a partnership between themselves, and that none was in fact created. And there being no partnership between themselves, it is not material to enquire what was its effects as to third parties. Courts never make partnerships as between the parties themselves, but leave them to contract their own terms.

What then, in conclusion, should be the judgment of this court in the premises? I answer with candor and confidence that I believe it ought to affirm the judgment of the circuit court, with damages and costs, as provided by the statute in

such cases made and provided. Abstract justice and equity demands it, and in my humble opinion, the law fully sustains this demand.

THOMAS W. HARRISON, J., delivered the opinion of the court.

The plaintiff in the court below instituted his action of assumpsit to recover of the defendant 300 dollars, which he claimed he had loaned him, and 100 dollars, one half of the profits made with the 300 dollars by trading in sheep. Defendant pleaded non-assumpsit. The plaintiff submitted his evidence to sustain the issue on his part. The defendant demurred to it, and the plaintiff joined in the demurrer. Upon the demurrer the county court gave judgment for the defendant. The circuit court reversed the judgment of the county court, and the plaintiff in error alleges here, that the circuit court erred in so doing.

The demurrent admits the truth of the evidence of his adversary, and all fair inferences to be drawn from it; but in this case insists that the evidence shows there was a partnership existing between the parties in reference to the matter in controversy, and therefore the defendant in error could maintain no action at law against him.

That there was a partnership in regard to the matter in controversy, is admitted and asserted by both parties. Snider gave Newbrau 300 dollars to buy sheep with, and told the witness Neely that he and Newbrau were partners; that he was to have half the profits; and witness heard him at different times talking about being in partnership in driving sheep. He also told Fox, another witness, that he was to have half the profits. Newbrau told Fox they were partners; that he was to have the money to trade in sheep, and Snider was to have half the profits, if any.

There is no proof of any loan. If any, it can only be inferred from what Snider said about interest on his money. That was not sufficient to support the issue on his part.

The defendant in error has not shown, to the satisfaction of the court, that this partnership was limited to any portion

of the adventure. He has not shown that it was limited to any particular time. He has not shown that it was dissolved, nor has he shown anything giving him the right to sue his partner at law. The presumption then, is, that the partnership was existing when he commenced his action, and that it related to the whole subject in controversy. Under such a state of facts it is well settled, that this action cannot be maintained. 1 Chitty on Pleading, 26–7.

The remedy is by bill in equity for an account dissolution, and decree for any balance found due him. The law applicable to this case may be found in Colyer on Partnerships, §§ 3, 16, 55, 107, 289, 774; and in 5 Leigh, *Brown* v. *Higginbotham.*

This being the condition of the parties, it is immaterial to notice the other objections to the judgment of the court below, for whatever be the opinions or rulings of this court as to them, would be wholly useless to either of the parties.

The judgment of this court therefore is, that the judgment of the circuit court be reversed and annulled; that the judgment of the county court be affirmed, and that the plaintiff in error recover his costs in the circuit court and in this court expended.

JUDGMENT REVERSED.